UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF JUAN CARLOS | ) | 1:13CV1559 |
| ANDRADE RODRIGUEZ | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | JUDGE LESLEY WELLS |
| v. | ) | (Mag. Judge Kenneth S. McHargh) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant | ) | REPORT AND |
| | ) | RECOMMENDATION |

McHARGH, MAG. JUDGE

The plaintiff, the Estate of Juan Carlos Andrade Rodriguez[1], has filed a five-count complaint against defendant United States of America ("USA"), pursuant to the Federal Tort Claims Act ("FTCA"), and alleged violations of the decedent Rodriguez's civil rights and disability rights.  (Doc. 1, compl., at ¶9.)

According to the allegations of the complaint, Rodriguez was a pre-trial detainee in the custody of the defendant USA from February 19, 2010, until September 17, 2010, when he was sentenced to a term of incarceration. During the period of pre-trial detention, Rodriguez was housed at the Northeast Ohio Correctional Center ("NEOCC"), in Youngstown.  (Doc. 1, compl., at ¶¶ 22, 23, 49.)

---

[1] Since this suit was filed in July 2013, Mr. Rodriguez has died.  (Doc. 17.) Thus, some of the early documents filed refer to Rodriguez in the present tense.  The court will ordinarily refer to both the plaintiff-estate, as well as the decedent, as "Rodriguez," for purposes of this memorandum.

On Sept. 17, 2010, Rodriguez was committed to the custody of the U.S.

Bureau of Prisons ("BOP") to be imprisoned for a term of twelve months and one

day.  The sentencing judge recommended to the BOP that Rodriguez be placed in

the Federal Medical Facility, in Arizona.  *United States v. Rodriguez*, No.

1:10CR0118 (N.D. Ohio Sept. 17, 2010) (slip op., judgment entry).  After his

sentencing, Rodriguez continued to be held at NEOCC until Jan. 3, 2011, when he

was removed by Immigration Customs Enforcement to be transported to Mexico.

(Doc. 1, at ¶¶ at 1, 23, 56.)

The defendants as named in the complaint are:  (1) defendant United States

of America, by and through the United States Marshals Service; (2) defendant

United States of America, by and through the Bureau of Prisons; and, (3) defendant

United States of America, by and through NEOCC Youngstown.  (Doc. 1, at ¶¶ 4-6.)

Currently before the court is defendant USA's motion to dismiss (doc. 16), as

well as defendant USA's motion to convert their own motion to dismiss into a

motion for summary judgment (doc. 25).  Rodriguez has filed an opposition to the

motion to dismiss (doc. 23), as well as an opposition to the motion to convert the

motion into one for summary judgment (doc. 27).  The defendant has filed a reply

brief in support of their motion(s).  (Doc. 26.)

The defendant USA moves to dismiss pursuant to Civil Rule 12(b)(1) (lack of

subject-matter jurisdiction) and Rule 12(b)(6) (failure to state a claim on which

relief can be granted).  Although the defendant's motion is based on several

2

grounds, the jurisdictional argument is that the complaint alleges that Rodriguez's injuries occurred during his incarceration at a "private prison," and, under the FTCA, the United States is not responsible for the alleged misconduct of independent contractors.  (Doc. 16, memorandum in support, at 4.)

Rodriguez alleges that this case is "about the failure to properly monitor and treat the Plaintiff's type one diabetes," while he was held at NEOCC.  (Doc. 1, at ¶1.)  The first count of the complaint alleges that defendant USA "[through] their continuing care of the Plaintiff for his diabetes, negligently administered medical treatment, negligently failed to administer[] proper medical treatment, and negligently denied proper medical care/treatment," resulting in permanent harm to him.  (Doc. 1, at ¶¶ 64-65.)  As summarized by Rodriguez, while he was in the custody of the defendant USA he "was found unresponsive on at least eight (8) occasions," incidents primarily related to his diabetic condition.  (Doc. 23, memorandum in support, at 1.)

The second count of the complaint alleges an Eighth Amendment violation, in that defendant USA knew of and disregarded an excessive or substantial risk to Rodriguez through the USA's deliberate indifference to Rodriguez's serious medical condition (diabetes).  (Doc. 1, at ¶¶ 67-73.)

The third count of the complaint alleges violations of Rodriguez's rights under the Due Process Clause of the Fourteenth Amendment, which prohibits cruel and unusual punishment.  (Doc. 1, at ¶¶ 75-77.)

The fourth count of the complaint alleges that the defendant's actions "deprived Plaintiff of the full services of the penal system, violating the Americans with Disabilities Act ("ADA"), as codified at 42 U.S.C. § 12101 et seq."  The complaint alleges that Rodriguez suffered from type one diabetes, which is a disability in this case, and that defendant's actions in failing to provide him with proper medical care "deprived him of standard rehabilitative services contrary to the ADA."  (Doc. 1, at ¶¶ 79-87.)

The fifth count of the complaint alleges a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, in that Rodriguez was, and was regarded by defendant to be, a handicapped person for purposes of Section 504, and that defendant failed and refused to provide necessary medical treatment, based solely on his handicapped status as a diabetic.  (Doc. 1, at ¶¶ 89-94.)

## I.  MOTION TO CONVERT

Because it would impact the standard for the court's decision, the court will first consider defendant's motion to convert their own motion to dismiss into a motion for summary judgment.  (Doc. 25.)  Unfortunately, neither party's arguments on this issue are entirely satisfactory.

In support of the motion to convert, the defendant argues that, in the opposition to the motion to dismiss, Rodriguez "referenced the discretionary exception in the Federal Tort Claims Act and claimed, among other things, that the

4

Federal Defendant negligently hired and/or supervised CCA, which required the Federal Defendant to obtain a declaration and supporting exhibits." (Doc. 25, at 1.) The defendant does not point out that Rodriguez, in opposition to the motion to dismiss, introduced a number of his own exhibits in support of his case. *See generally* doc. 23, at 2-3, citing plaintiff's exhibits attached to response.

Rodriguez opposes the motion to convert. Rodriguez begins by pointing out the different standards for a motion to dismiss and a motion for summary judgment. Rodriguez asserts that a motion to dismiss attacks the facts as alleged, and the reasonable inferences drawn from them. (Doc. 27, at 1.) However, Rodriguez then states: "Here there are genuine issues of material fact and the Defendant should not permitted to convert his Motion to Dismiss into a Motion for Summary Judgment." (Doc. 27, at 2.) This mention of "genuine issues of material fact" invokes the standard for summary judgment, Fed. R. Civ. P. 56(a), and it is unclear how the court should construe this statement as support for an argument to deny the motion to convert.

The defendant USA moves to dismiss both pursuant to Civil Rule 12(b)(1), based on lack of subject-matter jurisdiction, and pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. These two provisions of Rule 12 involve differing burdens. The court addresses jurisdiction first.

Before addressing the defendant's motion to dismiss for failure to state a claim, the court must determine whether it has jurisdiction over the subject matter.

5

*Moir v. Greater Cleveland Reg'l Transp. Auth.,* 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).  If the court does not have jurisdiction, the motion to dismiss for failure to state a claim is moot.  *Id.*

When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction.  *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003); *Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000) (citing *Moir*, 895 F.2d at 269); *GTE North, Inc. v. Strand*, 209 F.3d 909, 915 (6th Cir.), *cert. denied*, 531 U.S. 957 (2000).  The defendant's jurisdictional argument is that the complaint alleges that Rodriguez's injuries occurred during his incarceration at a "private prison," and, under the FTCA, the United States is not responsible for the alleged misconduct of independent contractors.  (Doc. 16, memorandum in support, at 4.)

As defendant points out, the court can look outside the pleadings to resolve a factual attack in a Rule 12(b)(1) motion to dismiss.  (Doc. 25, at 1, citing cases.) Once a defendant has made a factual attack[2] through a Rule 12(b)(1) motion, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage v. Glendale*

---

[2]  A factual attack is not a challenge to the sufficiency of the allegations of the complaint, but a challenge to the factual existence of subject matter jurisdiction. *Maldonado Parra v. Gonzales*, No. 4:04CV920, 2006 WL 2463665, at *3  (N.D. Ohio Aug. 21, 2006) (citing *Walters v. Leavitt*, 376 F.Supp.2d [746], 752 (E.D. Mich. 2005)).

*Union H.S., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003), *cert. denied,* 541 U.S. 1009 (2004); *see also Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir.  2007); *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (permissible for court to review evidence outside pleadings); *Nichols*, 318 F.3d at  677 (same).  In the context of a Rule 12(b)(1) motion, however, this supplemental evidence does not convert the motion into a motion for summary judgment.  *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 917 (6th Cir. 1986).

In fact, Civil Rule 12 does not provide for converting a motion to dismiss under Rule 12(b)(1) into a Rule 56 motion for summary judgment.  Rule 12(d) provides only that, where matters outside the pleadings are presented on a motion under Rule 12(b)(6) or 12(c), the motion must be treated as one for summary judgment.  Fed. R. Civ. P. 12(d); *see also Maldonado Parra*, 2006 WL 2463665, at *3.  In the context of a Rule 12(b)(1) motion, the court's consideration of evidence necessary to establish subject matter jurisdiction does not convert the motion to dismiss into a motion for summary judgment.  *Rogers*, 798 F.2d at 917.

Insofar as the motion to dismiss is based on Rule 12(b)(6), the court is able to resolve that motion based on the complaint, and the briefs, without the necessity of extrinsic evidence.

The defendant USA's motion to convert their own motion to dismiss into a motion for summary judgment (doc. 25) is DENIED.

## II.  JURISDICTION AND THE FEDERAL TORT CLAIMS ACT

In the first count, Rodriguez seeks relief against the United States under the Federal Tort Claims Act ("FTCA").  Under 28 U.S.C. § 1346(b)(1), federal district courts have exclusive jurisdiction over civil actions against the United States for claims pursuant to the Federal Tort Claims Act ("FTCA").  *Singleton v. United States*, 277 F.3d 864, 872 (6th Cir. 2002).  Moreover, 28 U.S.C. § 2679(b)(1) provides that the FTCA is the exclusive remedy for tort and statutory damages against the United States.  *See Levin v. United States*, 133 S.Ct. 1224, 1229 (2013).

However, whether a common law tort claim against the United States is actionable depends on the government's consent to be sued through waiver of its sovereign immunity.  *Stewart v. United States Dept. of Veterans Affairs*, No. 1:13CV494, 2013 WL 4758034, at *3 (N.D. Ohio Sept.4, 2013) (citing *United States v. Sherwood*, 312 U.S. 584, 590-591 (1941)). Without an express waiver by the United States, a court will not have subject matter jurisdiction to hear the suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  The FTCA waives the United States Government's sovereign immunity for the negligent acts of government employees. 28 U.S.C. § 1346(b)(1); see *Montez v. United States*, 359 F.3d 392, 395 (6th Cir. 2004).

In his complaint, Rodriguez alleges that the United States of America has a duty to use reasonable care in ensuring the safety of federal detainees no matter where they are housed.  (Doc. 1, compl., at ¶ 63.)  He alleges this case is "about the

8

failure to properly monitor and treat the Plaintiff's type one diabetes," while he was held at NEOCC.  (Doc. 1, at ¶1.)  The complaint alleges that "the Defendant, th[r]ough their continuing care of the Plaintiff for his diabetes, negligently administered medical treatment, negligently failed to administer[]  proper medical treatment, and negligently denied proper medical care/treatment," resulting in permanent harm to the Plaintiff.  (Doc. 1, at ¶ 64.)  As noted earlier, the defendants as named in the complaint are:  (1) defendant USA, by and through the United States Marshals Service; (2) defendant USA, by and through the Bureau of Prisons; and, (3) defendant USA, by and through NEOCC Youngstown.  (Doc. 1, at ¶¶ 4-6.)

Defendant argues that they are entitled to a dismissal of the case because the court lacks subject matter jurisdiction over all of Plaintiff's claims, because all of the alleged conduct occurred at NEOCC, which is a private prison; thus, the United States was not directly involved in the alleged misconduct.  (Doc. 16, at 4-6.) Defendant argues that there are no allegations or no evidence that employees of the United States "were involved in Rodriguez' day-to-day care at NEOCC and/or directed his care and treatment," so they can not be held liable for the alleged misconduct of NEOCC as independent contractors.  (Doc. 16, at 6.)

As mentioned earlier, when the defendant challenges subject matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction.  *Nichols*, 318 F.3d at 677; *Hedgepeth*, 215 F.3d at 611 (citing *Moir*, 895 F.2d at 269); *GTE North*, 209 F.3d at 915.  The plaintiff's burden to prove subject matter jurisdiction is not

onerous.  *Metro Hydroelectric Co., LLC v. Metro Parks*, 541 F.3d 605, 610 (6th Cir.

2008) (citing *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir.

1996)).  The plaintiff bears the burden of establishing by a preponderance of the

evidence that the court has subject-matter jurisdiction.  *Hamm v. United States*,

483 F.3d 135, 137 (2d Cir. 2007); *Nader v. Democratic Nat'l Comm.*, 555 F.Supp.2d

137, 146 (D. D.C. 2008), *aff'd*, 567 F.3d 692 (D.C. Cir. 2009); *In re Dinastia, L.P.*,

381 B.R. 512, 518-519 (S.D. Tex. 2007).

The fact that the court takes evidence for the purpose of deciding the

jurisdictional issue does not mean that factual findings are binding in future

proceedings; the res judicata effect is limited to the jurisdictional issue.  *Foshee v.

Forethought Federal Sav. Bank*, No. 09-2674, 2010 WL 2650733, at *3-*4 (W.D.

Tenn. July 1, 2010) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.), *cert.

denied,* 513 U.S. 868 (1994)).  *See also Winslow v. Walters*, 815 F.2d 1114, 1116 (7th

Cir. 1987) (citing *Baldwin v. Iowa State Traveling Men's Assn.*, 283 U.S. 522 (1931))

(ruling on motion to dismiss for lack of subject matter jurisdiction is not on merits;

res judicata effect limited to question of jurisdiction).

At issue, in part, is the FTCA's waiver of the United States Government's

sovereign immunity for the negligent acts of government employees.  28 U.S.C. §

1346(b)(1); *see Montez*, 359 F.3d at 395.  The statute defines "government

employees" as "officers and employees of any federal agency."  28 U.S.C. § 2671.

The definition does not include independent contractors, nor the employees of

independent contractors.  *See United States v. Orleans*, 425 U.S. 807, 813-814 (1976).

The defendant argues that, because the USA "was not directly involved in the alleged misconduct," which occurred at exclusively at NEOCC, the defendant USA cannot be held liable for the alleged misconduct of its independent contractors. (Doc. 16, at 2, citing *Orleans*, 425 U.S. at 813-815; *Logue v. United States*, 412 U.S. 521, 526-527 (1973); and, *Ayon v. NEOCC*, No. 4:11CV1010, 2011 WL 5373784, at *2 (N.D. Ohio Oct. 31, 2011) *aff'd*, 2012 WL 2366238 (6th Cir. June 22, 2012).)

In *Logue v. United States,* plaintiffs were parents who brought suit against the U.S. under the FTCA for the wrongful death of their son who hanged himself when he was a federal prisoner held in a county jail. The federal Marshal had informed the chief jailer of the inmate's suicidal tendencies (he had already attempted suicide in custody once), but made no specific arrangements for constant surveillance.  *Logue*, 412 U.S. at 524.  Jail employees made only periodic checks when they happened to be on the floor for other reasons.  *Logue*, 412 U.S. at 525. The district court found that the U.S. was liable for the negligence of the sheriff's employees, as well as the negligence of the Marshal.  *Id.*  The court of appeals reversed, finding that the Marshal had no power or authority to control any of the internal functions of the county jail, notwithstanding the contractual arrangements for housing federal prisoners.  *Id.*

11

The Supreme Court pointed out that Section 2671 "adopts the traditional distinction between employees of the principal and employees of an independent contractor with the principal, and . . . the critical factor in making this determination is the authority of the principal to control the detailed physical performance of the contractor." *Logue*, 412 U.S. at 527-528.  The Court found that:

> . . . Congress not only authorized the Government to make contracts such as the one here in question, but rather clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the contractor to do a good job.  The contract entered into between the Government and Nueces County reflects a similar division of responsibility. The county undertakes to provide custody in accordance with the Bureau of Prisons' 'rules and regulations governing the care and custody of persons committed' under the contract.  * * * * * But the agreement gives the United States no authority to physically supervise the conduct of the jail's employees; it reserves to the United States only 'the right to enter the institution . . . at reasonable hours for the purpose of inspecting the same and determining the conditions under which federal offenders are housed.'

*Logue*, 412 U.S. at 529-530.  The Court agreed with the court of appeals that the federal Marshal had no authority to control the activities of the sheriff's employees, and thus agreed that the sheriff's employees were employees of a contractor, not employees of a federal agency.  *Logue*, 412 U.S. at 530.

The Supreme Court in *Logue* thus found that the United States was not liable for the negligence of the county employees, but that finding did not end the case.  The Court pointed out that the district court had also found liability for the negligent acts of the federal Marshal, a federal government employee.  "The District

Court found that [the deputy Marshal], knowing of the prisoner's suicidal tendencies, should have made 'specific arrangements . . . for constant surveillance of the prisoner,' and that his failure to do so was negligence." *Logue*, 412 U.S. at 532. Since the Court found that the court of appeals did not consider the distinct question regarding the negligence of the Marshal, it remanded on that issue. *Id.* at 532-533.

In *United States v. Orleans*, the Supreme Court considered the question of whether a community action agency funded under a federal statute was a federal instrumentality or agency for purposes of FTCA liability. *Orleans*, 425 U.S. at 809. The case involved a minor child who was injured on a recreational outing sponsored by the community group. *Id.* at 810.

The Court pointed out that the FTCA is a limited waiver of sovereign immunity, and was never intended to reach employees or agents of all federally funded programs. *Orleans*, 425 U.S. at 813. The Act contains an exclusion for independent contractors. *Id.* at 814. Whether a government contractor is considered a "federal agency" is determined by "the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *Orleans*, 425 U.S. at 814 (citing *Logue*, 412 U.S. at 528). The issue is not whether the alleged tortfeasor "receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." *Orleans*, 425 U.S. at 815.

13

In *Ayon*, the plaintiff was a federal inmate housed at NEOCC, who asserted a FTCA claim against the United States, alleging that the defendants allowed tear gas from an outdoor training exercise to seep into his housing unit in the middle of the night, causing breathing difficulties. *Ayon*, 2011 WL 5373784, at *1. The court noted that the FTCA did not apply to independent contractors and their employees. The court pointed out that the actions that gave rise to the inmate's tort claim were committed by employees of an independent contractor, and thus the United States was not liable under the FTCA for the acts of the NEOCC employees. *Ayon*, 2011 WL 5373784, at *2.

The defendant argues that the NEOCC employees here are not federal employees under the FTCA, and the defendant USA is not liable for their alleged misconduct. (Doc. 16, memorandum in support, at 2, 6.) As noted by the defendant, the common theme of the cases above is the application of the common-law distinction between contractors and employees or agents, which turns on the absence of authority of the principal to control the specific conduct of the contractor in the performance of the contract. *See, e.g.*, *Logue*, 412 U.S. at 527-528.

Rodriguez responds that his complaint alleges that the defendant USA, via the US Marshals Service and the US Bureau of Prisons, maintained custody of Rodriguez and was responsible for his welfare. (Doc. 23, memorandum in support, at 1, citing Compl., at ¶¶ 4-5; *see also* doc. 23, PX 2.) He alleges that this case is "about the failure to properly monitor and treat the Plaintiff's type one diabetes,"

14

while he was held at NEOCC.  (Doc. 1, at ¶1.)  Rodriguez notes that the complaint alleges that defendant USA was aware that Rodriguez faced a substantial risk of harm due to his status as a diabetic inmate, and disregarded that risk; and that there was objective evidence that Rodriguez had a serious need for medical care, which evidence was ignored.  (Doc. 23, memorandum in support, at 1, citing compl., at ¶¶ 18-19.)

Rodriguez points out that the defendant USA claims that "the United States was not directly involved in the alleged misconduct," because, defendant argues, the misconduct "occurred exclusively at NEOCC."  (Doc. 16, at 2; doc. 23, memorandum in support, at 1.)  Rodriguez responds that:

> The Plaintiff's Complaint specifically alleges that the Defendant was negligent when it failed to take any reasonable measures to address the Plaintiff's serious need for medical care or take any reasonable measures to assure Plaintiff was not being exposed to an unreasonable risk of harm.  The Defendant negligent[ly] placed the Plaintiff at NEOCC and negligently continued to house the Plaintiff at NEOCC after it was clear that NEOCC could not and would not care for the basic medical needs of the Plaintiff.  The U.S. Marshal's own records show that the Plaintiff had "special handling remarks" because he was diabetic.

(Doc. 23, memorandum in support, at 2, quoting PX 3.)

Rodriguez, in distinguishing the facts of *Ayon* from the situation at hand notes that, in *Ayon*, the USA did not have any prior knowledge of, or involvement in, Ayon's medical situation.  (Doc. 23, memorandum in support, at 2.)  Here, Rodriguez claims that the complaint specifically alleges that the defendant failed to take any reasonable measures to address his serious need for medical care, and

15

"negligently continued to house [him] at NEOCC after it was clear that NEOCC could not and would not care for" his medical needs.  (Doc. 23, at 2.)

Rodriguez notes that he was sent to NEOCC on February 19[3], 2010, and was first sent to St. Elizabeth's Hospital approximately one month later, on March 26, 2010, and was not released until March 30.  (Doc. 23, at 2, citing doc. 23, PX 5, at 3; *see also* compl, at ¶¶ 22, 26.)  Rodriguez was admitted to St. Elizabeth's Hospital, and sent to numerous other health care providers, throughout the time he was housed at NEOCC.  *Id.* at 2-3; *see generally* compl., at  ¶¶ 26, 31, 33, 36, 47, 51-52, 54, 55.  As noted earlier, Rodriguez while in the custody of the defendant USA "was found unresponsive on at least eight (8) occasions," incidents primarily related to his diabetic condition.  (Doc. 23, memorandum in support, at 1.)

Rodriguez asserts that the defendant "had knowledge of every single time the Defendant was sent out to receive medical treatment, was required to be notified of all medical treatment, had to approve all medical treatment, and had to pay for all medical treatment, and managed all communications regarding Plaintiff's medical treatment."  (Doc. 23, memorandum in support, at 3; *see also* doc. 23, PX 6, at e.g., 20, 60.)  Rodriguez states that his family was instructed to communicate only with the U.S. Marshals, and not to contact the medical staff at NEOCC, regarding the medical care he was receiving.  (Doc. 23, PX 4, at 4.)  Rodriguez contends that,

---

[3]  A typo in Rodriguez's brief actually reads "February 29, 2010" (coincidentally a non-existent date), but the record shows the date in fact should read "February 19." (Doc. 23, PX 5, at 3.)

based on the totality of the evidence, "it was clear that the U.S. Marshals were heavily involved in the day-to-day medical decisions regarding the Plaintiff and extremely involved in this specific Plaintiff's lack of proper medical care and treatment." (Doc. 23, memorandum in support, at 3.)  Rodriguez claims that the defendant was continuously notified of his medical status "through records sent from NEOCC to the U.S. Marshals," and other communications.  (Doc. 23, at 3, citing PX 6.)

Rodriguez also points out that the defendant also received notice several times during the summer of 2010 of Rodriguez's deteriorating medical condition, through motions filed with the district court, including at least one instance of a discussion of the situation with the district judge in open court.  (Doc. 23, at 10-12.)

The evidence submitted by Rodriguez includes a number of U.S. Marshals Service "Prisoner Medical Request" forms concerning Rodriguez, which were filled out by NEOCC personnel.  The form includes a section for "Description of Required Services."  At the bottom of the form, it reads:

> NON-EMERGENCY:  Prior to seeking medical attention for a prisoner, complete this form and fax to USMS D— F— (216) [full name and number omitted].  A USMS representative will notify you of the approval or disapproval of the request.

> EMERGENCY:  In emergency cases, obtain medical treatment and notify USMS D— F— (216) [full name and number omitted] as soon as possible.  This form must be completed and faxed no later than 24 hours following treatment.

(Doc. 23, PX 6, at e.g., 20, 60.)

17

Rodriguez also points to the contract between the defendant and NEOCC, which provides:

> All non-emergency outside care (i.e. medical, dental and mental health) for USMS' prisoners shall require pre-authorization through the COTR[4] or designee in consultation with OIMS[5] to ensure consistency with USMS' Prisoner Health Care Standards.

(Doc. 23, at 3, quoting doc. 26, DX A, at p. "C34.")

When an inmate is sent to the hospital, the contract provides:

> The Contractor will notify the District's Supervising Deputy U.S. States [sic] SDUSM or the Duty Officer immediately upon notification of detainee admission to the hospital facility.  * * * * *  The detainee will remain in contractor custody after admission and for the duration of the hospital stay or until transferred to USMS custody at the discretion of USMS/COTR.

(Doc. 23, at 4, quoting doc. 26, DX B, at p. "C15.")

Rodriguez contends that, at all times and particularly when he was admitted to the hospital, the defendant USA through the U.S. Marshals Service, was immediately notified and had the ability and discretion to ensure that Rodriguez got proper medical care and treatment.  Rodriguez contends that the defendant had this control and was negligent when it failed to exercise it.  The defendant approved, and paid for, the medical treatment given to Rodriguez, but failed to alleviate the situation when they became aware his condition was deteriorating.

---

[4]  COTR= Contracting Officer's Technical Representative.  An employee of the government responsible for monitoring all technical aspects and assisting in administering the contract.

[5]  OIMS= Office of Interagency Medical Services, Prisoner Operations Division, U.S. Marshals Service.

Rodriguez argues that, because defendant USA retained control over the most fundamental medical decisions concerning Rodriguez, the defendant USA directed the manner in which NEOCC carried out its obligations under the contract.  (Doc. 23, at 4.)

In *Brown v. United States*, the court found that an FTCA claim against the USA for its own negligence could survive, where the claim was that the government negligently breached its duty to exercise reasonable care in providing for an inmate's safety by placing him in a private facility that it knew, or reasonably should have known, would not protect his safety.  *Brown v. United States*, 486 F.2d 284, 288-289 (8th Cir. 1973).  *See generally Logue*, 412 U.S. at 532-533; *Cline v. U.S. Dept. of Justice*, 525 F.Supp. 825, 831 (D. S.D. 1981).

On remand, the district court in *Brown* found that, although the Bureau of Prisons had statutory authority to contract for the confinement of federal prisoners in non-federal facilities, the BOP nonetheless had a positive duty to exercise due care for the safety of all federal prisoners and convicts "regardless of whether they are confined in federal institutions or whether they are confined in State or local jails or penal institutions."  *Brown v. United States*, 374 F.Supp. 723, 729 (D. Ark. 1974).  The court recognized that the government had no authority to control the operation and management of the jail, but found this consideration to be irrelevant. The court agreed with an earlier opinion to the effect that the breach of the duty of

care occurred when the prisoner was confined under circumstances which posed a

danger to him, and continued, quoting:

> Once the Government undertakes performance of an act entailing a
> duty of ordinary care it may not thereafter avoid liability under the
> Federal Tort Claims Act simply by abandoning the undertaking and
> attempting to attribute the responsibility to someone else . . .

*Brown*, 374 F.Supp. at 729 (quoting *Logue v. United States*, 463 F.2d 1340, 1341-

1342 (5th Cir. 1972)).

Rodriguez has produced evidence to counter defendant's contention that there

are no allegations or evidence that employees of the United States "were involved in

Rodriguez' day-to-day care at NEOCC and/or directed his care and treatment."

(Doc. 16, at 6; doc. 23, at 3-4.)  In addition, the court is mindful that the defendants

as named in the complaint include not only NEOCC, but also defendant USA, by

and through the United States Marshals Service; and, defendant USA, by and

through the Bureau of Prisons.  (Doc. 1, at ¶¶ 4-6.)

While it is true, as defendant argues, that "[a]n independent contractor is not

converted to a federal employee simply because the United States periodically

inspects the work of the independent contractor to see if it complies with federal

standards or guidelines," (doc. 16, at 6, citing *Moser v. United States*, No.

1:02CV302, 2006 WL 1476202, at *8-*9 (S.D. Ohio May 25, 2006)), the allegations

in Rodriguez's complaint, and the supplementary evidence he provides, go beyond

this type of routine oversight.

The court finds that Rodriguez has carried his burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction. Rodriguez has produced evidence to rebut defendant's contentions that there is no evidence that employees of the United States were involved in Rodriguez' day-to-day care at NEOCC, or directed his medical care and treatment.  The evidence shows that the Marshals Service and the BOP had a positive duty of care, and that the Marshals, for example, required pre-authorization, and approved or disapproved, of  requests for medical treatment.  Whether that level of direction would be sufficient to convert NEOCC employees into "federal" employees for FTCA purposes or not, at a minimum the evidence establishes the viability of a claim of negligence by the BOP or the Marshals Service, unquestionably federal employees. *See Brown*, 486 F.2d at 288-289; *see generally Logue*, 412 U.S. at 532-533.

In finding that Rodriguez has carried his burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction, the court makes no determination, at this point, whether the evidence produced for the purpose of establishing jurisdiction would be determinative of the issues on the merits.  *See Foshee*, 2010 WL 2650733, at *3-*4 (citing *Ritchie*, 15 F.3d at 598).

The defendant argues, for example, that the FTCA claims are barred because some evidence show that Rodriguez received extensive medical care.  (Doc. 26, at 2.) Also, defendant argues Rodriguez has failed to provide expert testimony supporting his medical claims.  (Doc. 26, at 4-6.)  These arguments go to the merits of the

21

FTCA claim, and not to the jurisdictional issue, and not will be considered at this point, in relation to the motion to dismiss for lack of subject-matter jurisdiction.

It is recommended that the motion to dismiss on the basis of subject-matter jurisdiction be denied.

### III.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The defendants also move to dismiss certain claims under Civil Rule 12(b)(6). (Doc. 16, at 2, 6-9.)  A motion to dismiss pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted, is procedural, and tests the sufficiency of the complaint.  *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  The court is to determine "whether a complaint states a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

#### A.  Constitutional Torts

The second and third counts of the complaint allege constitutional violations, of the Eighth Amendment (doc. 1, at ¶¶ 66-73), and the Fourteenth Amendment's Due Process Clause (doc. 1, at ¶¶ 74-77).  The defendant recognizes that the U.S. Supreme Court has allowed plaintiffs to recover damages for violations of their constitutional rights, in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395-396 (1971).  However, defendant contends that constitutional torts, or *Bivens* claims, are reserved for cases "against individual

22

officers acting under color of federal law alleged to have acted unconstitutionally." (Doc. 16, at 6-7, quoting *Ayon*, 2011 WL 5373784, at *2.)

The Supreme Court has repeatedly stated that the purpose of a *Bivens* cause of action is "to deter <u>individual</u> federal officers from committing constitutional violations." *Correctional Serv. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (emphasis added). The Court has declined to extend the cause of action to claims against federal agencies, or against private prisons. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (citing *FDIC v. Meyer*, 510 U.S. 471 (1994), and *Malesko*, 534 U.S. 61). The Court has stated that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The defendants as named in the complaint are:  (1) defendant USA, by and through the United States Marshals Service; (2) defendant USA, by and through the Bureau of Prisons; and, (3) defendant USA, by and through NEOCC Youngstown.  (Doc. 1, at ¶¶ 4-6.)  No individual federal officers are named as defendants.

Inexplicably, Rodriguez's opposition to the motion to dismiss his *Bivens* claims focuses on the elements of a deliberate indifference Eighth Amendment claim, and does not address the complaint's failure to include any specific federal officers.  *See generally* doc. 23, at 14-15.

23

Because a *Bivens* claim against a federal agency cannot survive, *FDIC v. Meyer*, 510 U.S. at 484-486, and the complaint does not include any specific individual defendants, the second and third claims should be dismissed.

## B.  ADA Claim

The fourth count of the complaint alleges that the defendant's actions violating the Americans with Disabilities Act.  (Doc. 1, at ¶¶ 79-87.)  The defendant asserts that the express terms of the ADA state that the Act does not apply to claims against the United States.  (Doc. 16, at 8, citing 42 U.S.C. § 12111(5)(B)(I); *Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998); and other cases.)  As defendant points out, doc. 26, at 1, Rodriguez does not oppose dismissal of the fourth count. *See generally* doc. 23.  Thus, the fourth claim should be dismissed.  *See, e.g.*, *Mekani v. Homecomings Fin., LLC*, 752 F.Supp.2d 785, 797 (E.D. Mich. 2010) (claim abandoned where no response to motion to dismiss); *Carter v. Verizon Wireless Serv., LLC*, No. 3:05-0554, 2005 WL 2491573, at *1 (M.D. Tenn. Oct. 7, 2005) (same); *Lipton v. County of Orange, NY*, 315 F.Supp.2d 434, 446 (S.D. N.Y. 2004).

## C.  Rehabilitation Act Claim

The fifth count of the complaint alleges a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  (Doc. 1, at ¶¶ 89-94.)  The defendant contends that Rodriguez cannot satisfy the elements of a claim.  (Doc. 16, at 8-9, citing *Burns v. City of Columbus,* 91 F.3d 836, 841 (6th Cir. 1996).)  As defendant

points out, doc. 26, at 1, Rodriguez does not oppose dismissal of the fifth count.  *See generally* doc. 23.  Thus, the fifth claim should be dismissed.  *See, e.g.*, *Mekani*, 752 F.Supp.2d at 797; *Carter*, 2005 WL 2491573, at \*1; *Lipton*, 315 F.Supp.2d at 446.


## IV.  SUMMARY

The defendant USA's motion to convert their own motion to dismiss into a motion for summary judgment (doc. 25) is DENIED.

The motion to dismiss (doc. 16) should be granted in part, and denied in part. The motion to dismiss for lack of subject matter jurisdiction should be denied.  The motion to dismiss for failure to state a claim should be granted as to the second, third, fourth, and fifth claims of the complaint.

RECOMMENDATION

It is recommended that the motion to dismiss (doc. 16) should be granted in part, and denied in part.  The motion to dismiss for lack of subject matter jurisdiction should be denied.  The motion to dismiss for failure to state a claim should be granted as to the second, third, fourth, and fifth claims of the complaint.


Dated:   May 22, 2015             /s/ Kenneth S. McHargh
                                 Kenneth S. McHargh
                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).